IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **BLANCA MIJARES,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:19-cv-01804-PWG |
| **WALMART, INC.** | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Blanca Mijares ("Mijares") filed this lawsuit against Walmart, Inc. ("Walmart") under Maryland's common law theory of negligence to recover for injuries she allegedly sustained while at a Walmart store. Compl. 1, ECF No. 2. Walmart filed a motion for summary judgment arguing, amongst other things, that Mijares is unable to prove that any injury she sustained is causally related to the incident. Def.'s Mem. in Supp. Mot. Summ. J. ("Def.'s Mem.") 1, ECF No. 20-1. For the reasons that follow, I will grant Walmart's motion for summary judgment.

**FACTUAL BACKGROUND**

The undisputed facts are as follows.[1] In 2016, Mijares went to a Walmart store in Maryland to buy fabrics. Dep. of Blanca Mijares ("Mijares Dep.") 14, ECF No. 20-2. While Mijares stood facing the fabric counter with her shopping cart on her right, a man, who Mijares assumes was a Walmart employee, pushed a dolly containing cardboard boxes down the aisle near where she was

---

[1] For purposes of this Memorandum, the facts that I identify as "undisputed" are those that are acknowledged by all the parties.

standing. *Id.* at 17. Mijares testified that the cardboard boxes made contact with the left side of her body. *Id.* at 20. Neither the dolly nor the shopping cart made contact with her body. *Id.* None of the boxes fell off the dolly after making contact with Mijares. *Id.* Mijares alleges that she was then wedged in between the dolly and the fabric cutting station. Compl. ¶ 8. After the incident in which the boxes on the dolly came into contact with the left side of her body, the person that Mijares assumes was a Walmart employee pushed the cart away from her and moved the dolly away. Mijares continued to walk around the store with her two friends for about an hour.[2] Mijares Dep. 25. Mijares did not report the incident to management at Walmart, did not notify Walmart that she claimed to be injured, and made no incident report on the day that the incident occurred. Mijares Dep. 20, 25.

Mijares states in her response to interrogatories that as a result of the incident, she suffered from Bell's Palsy on the left side of her face and frozen shoulder in her left shoulder, and she

---

[2] Walmart seeks to strike the affidavits of two witnesses of the incident that Mijares attached as support of her opposition to Walmart's motion for summary judgment. Def.'s Reply 2; Pl.'s Opp'n, ECF No. 21-2, Exhibit F ("Aff. of Maria Ordonez"); ECF No. 21-2, Exhibit G ("Aff. of Yelitze Medina"). Walmart requests that I not consider the affidavits as evidence in support of Mijares' opposition because neither witness was made available by Mijares to Walmart for depositions, in violation of Fed. R. Civ. P. 37(c)(1). This rule provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion." Fed. R. Civ. P. 37(c)(1). Walmart attached two letters that their counsel sent to Mijares' counsel, requesting deposition dates for all fact witnesses. October 29, 2019 Letter to M. Protas, ECF No. 22-1; November 18, 2019 Email to M. Protas, ECF No. 22-2. However, Walmart reports that neither Maria Ordonez nor Yelitze Medina were made available to Walmart for depositions. Def.'s Reply 2-3. Therefore, Walmart has not had an opportunity to depose either witness. Regardless, however, neither affidavit contains facts that influence the dispositive issue in this case – whether Mijares' injuries present a complicated medical question that requires the testimony of a medical expert to establish causation. For the reasons explained below, the causal connection between Mijares' injuries and the incident presents a complicated question due to facts from other sources that these affidavits do not dispute, such as the length of time between Mijares' medical treatment and the incident. Therefore, I do not need to determine whether the failure by Mijares' attorney to identify the two witnesses or make them available for deposition precludes consideration of their affidavits for purposes of resolving the pending motions.

currently suffers from headaches, muscle tension, and can no longer sleep on her left side.  Pl.'s Response to Def.'s Interrog. 6, ECF No. 21-2.

A week after the incident, Mijares went to the emergency department at Inova Alexandria Hospital ("Inova").  *See* INOVA Medical R., ECF No. 20-3.[3]  The medical records from Inova note that Mijares was not experiencing "actual bony shoulder pain," and that she had "normal range of motion, no tenderness, no bony tenderness, no swelling, no deformity, no laceration, no pain, no spasm, normal pulse and normal strength" in her left shoulder."  INOVA Medical R.  7-9.  Mijares' official diagnosis according to the INOVA medical records was acute back pain, thoracic left-sided back pain, and chest wall pain.  INOVA Medical R. 9.  Mijares later testified that she did not experience back pain as a result of the incident.  Mijares Dep. 33.  ("Q.   Okay.  So back pain is not a symptom of yours from this incident, correct? A.      No, it is not.").

Three months later, Mijares received medical treatment from a chiropractor at Family Chiropractic Center for approximately two months, where she received treatment in the form of cold pads, hot pads, and alignments.  *Id.* at 34.  Mijares also received treatment from a physical therapist intermittently.  *Id.* at 35-36.

Three years after the incident, Mijares sought medical treatment for shoulder pain from Dr. Jamal Zia, a family practice physician.  Dep. of Jamal U. Zia, M.D. ("Dr. Zia Dep.") 5, 11, ECF No. 20-6. Dr. Zia gave Mijares a "working diagnosis" of frozen shoulder[4] in her left shoulder.  *Id.* at 12.  Dr. Zia's usual process is to give a patient a working diagnosis when the patient does not want to move the body part, then have the patient come back for a follow-up visit to assess whether

---

[3] Walmart submitted exhibits containing medical records to the Court and Mijares, but the medical records are not included in their electronic filings.  Because the parties had these records available to them, referred to them in their filings, and did not object to them, I will consider them as well.  They are docketed at ECF. 20, sealed exhibits 11 and 12.
[4] The formal name of frozen shoulder is adhesive capsulitis.  Dr. Zia Dep, 13.

3

the patient notes any improvement and whether any diagnostic imaging or a referral to a specialist is necessary, then give the patient a final diagnosis. *Id.* Because Mijares did not follow up as requested, Dr. Zia was unable to give her a final diagnosis. *Id.* Dr. Zia testified that he was unable to say with a reasonable degree of certainty that Mijares suffered from frozen shoulder (or any shoulder injury) or what the cause of her pain was. *Id.* at 12-13. Dr. Zia also was unable to express an opinion to a reasonable degree of certainty that Mijares suffered Bell's Palsy. *Id.* at 14. Nevertheless, Mijares designated Dr. Zia as an expert. Pl.'s Expert Designation 3, ECF No. 20-5.

Mijares filed this lawsuit against Walmart for negligence to recover for the injuries she claims to have sustained as a result of the incident. Compl. 3-4. Walmart moved this Court to grant them summary judgment under Rule 56(a) of the Federal Rules of Civil Procedures because Mijares has failed to provide evidence showing that: (1) Walmart breached a duty owed to her; (2) she suffered any actual injury; and (3) that any injury she suffered was causally related to the incident. Def.'s Mem.4-7. The parties have fully briefed their arguments. *See* ECF Nos. 20-1, 21-1, 22. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). Because there is no genuine dispute of material fact relevant to the dispositive issue in this case and because Mijares has failed to demonstrate that any injury she incurred was causally related to the incident, Walmart's motion for summary judgment is granted.[5]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[5] Because I find that Mijares' failure to causally link her injuries to the incident is dispositive, it is not necessary for me to address the alternative arguments raised by Walmart.

to judgment as a matter of law." Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(c)(1). A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## DISCUSSION

To recover for negligence under Maryland law[6], a plaintiff must establish sufficient facts to prove "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Warr v. JMGM Group, LLC*, 70 A.3d 347, 353 (Md. 2013). Whether an injury is causally related to a negligent act must be established by expert testimony when the causal connection presents a "complicated

---

[6] Mijares is suing Walmart under Maryland's state law of negligence. Accordingly, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 (1938), I must apply the jurisprudence of Maryland's highest court or, if it has not spoken to the issue, predict how the state's highest court would rule. *See Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002).

medical question involving fact finding which properly falls within the province of medical experts (especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after the negligent act)." *Wilhelm v. State Traffic Safety Commission*, 185 A.2d 715, 719 (Md. 1962).

### Mijares has not produced any evidence from which a reasonable trier of fact could conclude that the incident caused her injuries

Walmart argues that this case presents a complicated medical question, that Dr. Zia's testimony does not link Mijares' injuries to the incident, and therefore that Mijares has failed to meet her burden to establish causation. Def.'s Mem. 7-8; Def.'s Reply 5, ECF No. 22. Mijares does not dispute that Dr. Zia did not establish a causal connection between her injuries and the incident. Instead, Mijares argues that she has established that her injuries were caused by the incident because her own testimony and the medical records that document her complaints to medical professionals both link her injuries to the incident. Further, she claims that this case does not involve a complicated medical question so, therefore, she does not need the testimony of a medical expert to establish causation. Pl.'s Mem. in Opp'n ("Pl.'s Opp'n") 7-8, ECF No. 21-1.

In *S.B. Thomas, Inc. v. Thompson*, the court held that a causal relationship presents a complicated medical question requiring expert testimony when any of the following factors are present:

> 1) some significant passage of time between the initial injury and the onset of the trauma; 2) the impact of the initial injury on one part of the body and the manifestation of the trauma in some remote part; 3) the absence of any medical testimony; and 4) a more arcane cause-and-effect relationship that is not part of common lay experience (the ileitis, the pancreatitis, etc.)

689 A.2d 1301, 1313 (Md. Ct. Spec. App. 1997). The Maryland Court of Special Appeals affirmed a trial court's grant of summary judgment to the defendant because the cause-and-effect relationship between a car accident and soft-tissue neck injury was not obvious enough to be

6

considered "within the common knowledge of laymen," even when the plaintiff complained of the injury immediately after the accident. *Desua v. Yokim*, 768 A.2d 56, 61-62 (Md. Ct. Spec. App. 2001). The court so held because: it agreed with the trial court that there are many possible causes of a neck injury, the disparity between the insignificant damage to the vehicle and the amount of the personal injury claim was large, and 18 days had passed between her emergency room visit and her treating physician visit. *Id.* at 61 n.2.

The question of whether Mijares' injuries are causally related to the incident presents a complicated medical question, requiring medical expert testimony. First, Mijares has not presented evidence showing that any medical professional diagnosed her with either frozen shoulder or Bell's Palsy. Mijares Dep. 31; Dr. Zia Dep. 12. Second, the medical records from Mijares' first medical visit after the incident (a week after the incident) indicate that Mijares complained of back pain (an injury she testified was not caused by the incident), and indicate that her shoulder had "normal range of motion, no tenderness, no bony tenderness, no swelling, no deformity, no laceration, no pain, no spasm, normal pulse and normal strength." INOVA Medical R. 7-9. Third, Mijares did not seek medical attention from Dr. Zia until three years after the incident, much longer than the 18 days the plaintiff in *Desua* waited to seek medical attention.[7] Fourth, it is not obvious to a layperson that as a result of cardboard boxes making contact with Mijares' person that Mijares would experience headaches, shoulder pain, and Bell's Palsy when Mijares did not fall to the ground, the boxes did not fall off of the dolly, and the boxes did not fall on top of her. Mijares Dep. 21. Therefore, the causal connection between Mijares' claimed injuries and the incident presents a complicated medical question, requiring expert testimony.

---

[7] Mijares does not present evidence that the treatment she sought from the chiropractor or physical therapist was related to any injury she sustained from the incident, nor any medical record from either medical professional.

Because Mijares did not present any expert testimony connecting her injuries to the incident, a jury would be left to speculate about causation. On the record before me, Mijares has failed to carry her burden of showing that there is a genuine dispute of material fact regarding causation, which is an essential element of her claim. In the absence of such a showing, she cannot prevail.

For the foregoing reasons, Walmart's motion for summary judgment is granted.

## **CONCLUSION**

Mijares has not presented any evidence from which a reasonable fact finder could conclude that any injury she sustained was caused by the incident. Therefore, Walmart is entitled to judgment as a matter of law and I grant their motion for summary judgment.

## **ORDER**

Accordingly, on this eighth day of September, Walmart's Motion for Summary Judgment, ECF No. 20, IS GRANTED, with prejudice.

_____/S/_____
Paul W. Grimm
United States District Judge
